945 So.2d 955 (2006)
CITY OF MINDEN, Plaintiff-Appellant,
v.
Carolyn Sale Warren McDANIEL and Graceland Gardens, Defendants-Appellees.
City of Minden, Plaintiff-Appellant,
v.
Timothy Lee Kennedy, Kelly Bays Kennedy and Graceland Gardens, Defendants-Appellees.
City of Minden, Plaintiff-Appellant,
v.
The Jeannine Sale Miller Living Trust, Dr. Mark D. Miller and Graceland Gardens, Defendants-Appellees.
Nos. 41,370-CA to 41,372-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
Rehearing Denied January 18, 2007.
*956 Herschel E. Richard, Jr., Lee H. Ayres, Shreveport, for Appellant.
Louis C. Minifield, Tomas Arceneaux, Scott R. Wolf, Shreveport, for Appellee.
Before WILLIAMS, STEWART and MOORE, JJ.
WILLIAMS, J.
The City of Minden ("the City") seeks reversal of the district court's ruling granting summary judgment in favor of the defendant landowners, dismissing the City's expropriation actions with prejudice. The district court concluded that the City was required to obtain the consent or concurrence of the Webster Parish Police Jury prior to expropriating the private property situated outside of the City's municipal limits. For the reasons that follow, the judgment of the district court is hereby reversed and this matter is remanded for further proceedings.

FACTS
The City initiated a program to improve and expand its airport by relocating the terminal, airfield hangars, other buildings and parking area. To implement the expansion project, the City sought to expropriate property which was adjacent to the airport, but outside of the City's corporate limits.
On December 9, 2005, the City filed three separate petitions of expropriation. The defendants named in the petitions are the owners of the subject property: Carolyn Sale Warren McDaniel, Timothy and Kelly Kennedy, Dr. Mark D. Miller, The Jeannine Sale Miller Living Trust and Graceland Gardens (hereinafter referred to collectively as "the landowners").[1]
The landowners filed motions for summary judgment, contending the City lacked the sovereign authority to expropriate property located outside the City's corporate limits. The landowners argued that by failing to obtain the consent of the Webster Parish Police Jury pursuant to LSA-R.S. 33:4621, the City failed to prove an essential element of its case. In its opposition to the motion, the City contended it was not required to obtain the police jury's consent pursuant to LSA-R.S. 2:131 and 133.
The district court granted summary judgment in favor of the landowners and dismissed the City's expropriation actions with prejudice. The City now appeals.

DISCUSSION
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.4/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
The mover has the initial burden of proof to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial *957 on the matter that is before the court on the motion for summary judgment, the mover must only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. LSA-C.C.P. art. 966(C)(2).
In this case, there are no issues of material fact in dispute. The City conceded that the property is located outside of its geographical limits, and the consent or concurrence of the police jury to expropriate the property was not obtained. The landowners contend that the City lacked the authority to expropriate the property at issue because the City failed to "obtain the requisite consent of the Webster Parish Police Jury as required under LSA-R.S. 33:4621." Thus, the sole issue presented for our review is whether obtaining the consent or concurrence of the Webster Parish Police Jury was an essential element of the City's expropriation action.
The general expropriation statute, LSA-R.S. 33:4621, provides:
Municipalities and parishes may expropriate and otherwise acquire any private property, within or without their limits, for any of the purposes for which they are organized, and for any works that they are authorized to own or operate, or which they are authorized to lease or donate to the United States. This Part shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the police jury of the parish in which the property is situated.
The Louisiana Legislature has granted cities, towns and other political subdivisions specific expropriation powers with regard to airports and landing fields. LSA-R.S. 2:131 provides, in pertinent part:
A. "Political subdivision" as used in this Part means any parish of this state. . . .
B. Cities, towns and other political subdivisions may separately or jointly, acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate, and police, airports and landing fields for the use of aircraft, either within or without the geographical limits of such municipalities, and other political subdivisions, and may use for such purposes any available property that is owned or controlled by such political subdivisions; but no political subdivision shall exercise the authority hereby conferred outside of its geographical limits except in an adjoining political subdivision or in any adjoining political subdivision adjacent to said adjoining political subdivision and this only jointly with those political subdivisions.[[2]]
The interpretation of a statute starts with the language of the statute itself. Louisiana Municipal Assoc. v. State, XXXX-XXXX (La.1/19/05), 893 So.2d 809. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may *958 be made in search of the intent of the legislature. LSA-C.C. art. 9.
A statute must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it." Louisiana Municipal Assoc., 893 So.2d at 837, quoting Sultana Corp. v. Jewelers Mut. Ins. Co., XXXX-XXXX (La.12/3/03), 860 So.2d 1112, 1116. In addition, "courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." Louisiana Municipal Assoc., 893 So.2d at 837, quoting Hollingsworth v. City of Minden, 2001-2658 (La.6/21/02), 828 So.2d 514, 517.
Pursuant to the laws of statutory construction, laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Louisiana Municipal Assoc., supra; Detillier v. Kenner Regional Med. Ctr., XXXX-XXXX (La.7/6/04), 877 So.2d 100.
Giving effect to LSA-R.S. 33:4621 and LSA-R.S. 2:131, et seq., as we are bound to do, and interpreting each statute in reference to the other, we conclude that the trial court erred in finding that the City was required to obtain the approval of the police jury prior to expropriating property located within the same parish, but beyond the City's corporate limits.
The plain language of LSA-R.S. 2:131 does not require a city or town to obtain the consent of a parish's governing body. Paragraph A of the statute defines "political subdivision" as "any parish. . . ." Paragraph B authorizes "cities, towns and other political subdivisions" to construct/expand/acquire airports and landing fields, "either within or without the geographical limits of such municipalities. . . ." However, the remainder of Paragraph B limits this authority, providing, "[B]ut no political subdivision shall exercise the authority hereby conferred outside of its geographical limits except in an adjoining political subdivision or in any adjoining political subdivision adjacent to said adjoining political subdivision and this only jointly with those political subdivisions." (Emphasis added).
If the definition of "political subdivision" contained in Paragraph A was used as a substitution for the phrase contained in the limiting language of Paragraph B, the language would read, "[B]ut no [parish] shall exercise the authority hereby conferred outside of its geographical limits except in an adjoining [parish] or in any adjoining [parish] adjacent to said adjoining [parish] and this only jointly with those [parishes]." The terms "cities" and "towns," although specified in the authorizing language of Paragraph B, were conspicuously omitted in the limiting language in the latter part of the paragraph.
Thus, we do not find that the legislature's definition of the term "political subdivision" in Paragraph A and its use of the same term in Paragraph B was meant to limit the authority conferred upon cities and towns. Along with the general reference to "political subdivision" contained in the limitation of authority of Paragraph B, the legislature could have easily chosen to include the terms "cities" or "towns," but it did not. From the legislature's perceived need to make such a specific reference to "political subdivision," it is reasonable to conclude that "cities" and "towns" are not automatically included in the limitation of authority contained within the statute.
Additionally, LSA-R.S. 33:4621 clearly provides that "municipalities and parishes *959 may expropriate . . . any private property, within or without their limits. . . ." The statute contains a limitation which provides, "This Part shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the police jury of the parish in which the property is situated." (Emphasis added). However, the plain language of 33:4621 does not prohibit a municipality from expropriating property in the same parish in which both the municipality and the property are situated. The phrase "any other parish" undoubtedly refers to a parish other than the one in which the municipality is situated. Had the legislature intended that a municipality be prohibited from expropriating property within the same parish, it follows that the legislature could have included such a limitation in the statute. It did not do so. It is not within our province to make the law, but rather to interpret and apply the law as written. See LSA-Const. Art. 2, §§ 1 and 2; LSA-Const. Art. 3 § 1; LSA-Const. Art. 5, § 1; LSA-C.C. arts. 1 and 2; Word of Life Christian Center v. West, XXXX-XXXX (La.4/17/06), 936 So.2d 1226.
For these reasons, we reverse the trial court's judgment granting summary judgment in favor of the landowners, and we remand this matter for further proceedings. In light of this conclusion, we pretermit any consideration of the issue raised in the City's remaining assignment of error with regard to the trial court's dismissal of the expropriation actions with prejudice, rather than without prejudice.

CONCLUSION
For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the landowners and we remand this matter for further proceedings. Costs of this appeal are assessed to the appellees.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, MOORE and SEXTON, JJ.
Rehearing denied.
NOTES
[1] Graceland Gardens, an unincorporated cemetery, appears through its managing official, The Jeannine Sale Miller Living Trust.
[2] LSA-R.S. 2:133 provides:

Private property needed by a city, town, or other political subdivision for an airport or landing field or for the expansion of an airport or landing field or for extension of runways may be acquired by grant, purchase, lease, or other means, if such political subdivision is able to agree with the owners of said property on the terms of such acquisition, and otherwise by expropriation.