998 So.2d 817 (2008)
LOUISIANA SAFETY ASSOCIATION OF TIMBERMEN-SELF INSURERS FUND, Plaintiff-Appellee,
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION, Defendant-Appellant.
No. 43,615-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*819 Allen & Gooch by Michael E. Parker, Lafayette, for Appellant.
Milling Benson Woodward by James K. Irvin, Stephanie Laborde, New Orleans, Provosty, Sadler, deLaunay, Fiorenza & Sobel by Joseph J. Bailey, Alexandria, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
This appeal presents an issue of first impression, namely, whether unpaid claims arising from the insolvency of the Louisiana Safety Association of Timbermen's Self-Insurers Fund's (hereafter the "Fund") excess insurer Reliance Indemnity Company ("Reliance") are "covered claims" under the Insurance Guaranty Association Law, La. R.S. 22:1375 et seq. Also at issue is whether the trial court erred in denying a motion to compel discovery by the Louisiana Insurance Guaranty Association ("LIGA") to obtain financial information about the individual members of the Fund for the purpose of establishing that the Fund's net worth precludes coverage by LIGA. Finding that the Fund's claims are covered claims and that its members are neither affiliates nor subsidiaries whose net worth may be considered in determining the aggregate net worth of the Fund, we affirm the trial court's judgment.

FACTS
The Fund is a group self-insurance fund formed in 1991 by the Louisiana Safety Association of Timbermen ("LSAT") as a means of securing workers' compensation to their employees. The Fund obtained the statutorily required excess insurance from Reliance for the 1998 policy year. On October 3, 2001, Reliance was placed in liquidation by the Commonwealth Court of Pennsylvania. The Fund filed proof of its claims against Reliance with LIGA.
On February 4, 2004, LIGA denied the Fund's claims. LIGA concluded that the policy between the Fund and Reliance was one of reinsurance through which the Fund, as an insurer, sought to limit its risk.
The Fund filed suit against LIGA seeking coverage for all past and future losses in accordance with the terms of the Reliance *820 policy. LIGA answered that its coverage extends only to direct insurance and not to reinsurance, that the Fund is an insurer whose claims it does not cover, that other insurance must be exhausted before LIGA coverage is reached, and that the combined net worth of the Fund's members exceeded $25 million during the year prior to Reliance's insolvency thereby precluding coverage.
On June 4, 2007, the Fund filed a motion for a partial summary judgment seeking a declaration that the Reliance policy was direct excess insurance, that its claims are "covered claims," that the Fund did not have other insurance covering the claims, and that the net worth of its members is not material to a determination of whether the claims are covered by LIGA.
In its cross motion for summary judgment, LIGA asserted that the Fund's claims are not covered because the Fund is an insurer and that amendments in 1999 to the definition of a "covered claim" under the Insurance Guaranty Association Law now bar the claims of a self-insurer. LIGA also filed a motion to compel discovery of financial information about the net worth of the Fund's members.
The trial court granted the Fund's motion for summary judgment finding that its claims fit the statutory definition of a "covered claim" and that the Fund is not an insurer. The trial court denied LIGA's motion to compel upon finding that the Fund's members are not "affiliates" of the Fund. This appeal by LIGA followed.

SUMMARY JUDGMENT DISCUSSION
Our review of the trial court's ruling on the motions for summary judgment is de novo and is conducted under the same criteria used by the trial court in determining whether summary judgment is appropriate-whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002.
LIGA argues that the trial court erred in granting summary judgment in favor of the Fund and in denying its own motion for summary judgment. Both motions concern whether the Fund's claims are "covered claims" under the Insurance Guaranty Association Law.
The Insurance Guaranty Association Law was enacted by the Legislature in 1970 in response to the problems caused by insurer insolvencies. Ursin v. Insurance Guaranty Association, 412 So.2d 1285 (La.1981). Its purpose, in part, is to "provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . ." La. R.S. 22:1376. According to La. R.S. 22:1378, the provisions "shall be liberally construed to effect the purpose under section R.S. 22:1376, which shall constitute an aid and guide to interpretation." We must interpret the Insurance Guaranty Association Law to protect claimants and policyholders and to advance their interests over LIGA's interests. Senac v. Sandefer, 418 So.2d 543, 546 (La.1982).
A covered claim is defined by La. R.S. 22:1379(3)(a) as "an unpaid claim . . . which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970." The Insurance Guaranty Association Law applies to "all kinds of direct insurance" except for those specifically excluded by La. R.S. 22:1377. To determine whether the guaranty coverage *821 applies to a particular policy, we are directed to look to the coverage specified and established in the policy provisions rather than to the name, label or marketing designation of the policy. La. R.S. 22:1377(B).
LIGA argues that the Fund is either an insurer or self-insurer whose claims it does not cover. The pertinent provision is La. R.S. 22:1379(3)(b), which states in relevant part:
(b) "Covered claim" shall not include any amount due any reinsurer, insurer, health maintenance organization or plan, preferred provider organization or plan, employee retirement fund including but not limited to plans subject to the Employee Retirement Income Security Act of 1974, Medicare, Medicaid, any insurance pool, or any underwriting association, or within the coverage represented, replaced, or both by a certificate of self-insurance as subrogation recoveries or otherwise.
(Emphasis added.)[1]
In arguing that the Fund is an insurer or self-insurer whose claims are disallowed by La. R.S. 22:1379(3)(b), LIGA focuses on how the Fund characterizes itself for tax purposes and how it is described in its excess coverage policy with Reliance. LIGA notes that the Fund treats itself as a mutual insurance company for federal income tax purposes and that it describes its purpose as providing workers' compensation insurance to the members of the Louisiana Safety Association of Timbermen.[2] The Reliance policy refers to the Fund as the "Reinsured." Because a typical excess policy does not characterize the policy holder as the "Reinsured," LIGA argues that the Reliance policy treats the Fund as an insurer. Moreover, the Reliance policy recognizes that the Fund is a self-insurer by requiring it to warrant that it would maintain its self-insurer qualification during the policy period. These observations by LIGA of labels applied to the Fund are not alone determinative of whether it is an entity whose claims are excluded. Rather, the answer is also to be found in how our laws treat the Fund.[3]

Is the Fund an insurer?
The term "insurer" is not defined by the Insurance Guaranty Association Law. However, the general definition provided in the Louisiana Insurance Code, La. R.S. 22:1 et seq., for the term "insurer" states:
[E]very person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange, insurance exchange syndicate, or a Lloyd's organization is an "insurer". Any person who provides an employee benefit trust as specified in Subparagraph (9)(a) of this Section is an insurer. A health maintenance organization is an *822 insurer but only for the purposes enumerated in R.S. 22:2002(7).
La. R.S. 22:5(10).
Insurance is defined as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." La. R.S. 22:5(9)(a).
On rehearing in Ursin, supra, the supreme court held that the language of La. R.S. 22:1379(3)(b) is clear and unambiguous in excluding from the definition of a "covered claim" any amount due an insurer as subrogation recoveries or otherwise. The court noted that the broad language of the statute encompassed amounts due an insurer for any reason. Id. Thus, if LSAT is an insurer, then its claims are not "covered claims."
It is undisputed that the Fund is a workers' compensation group self-insurance fund created pursuant to La. R.S. 23:1195 which provides in part:
A. (1) Any five or more Louisiana employers who are not public entities, each of whom has a positive net worth, is financially solvent and is capable of assuming the obligations set forth under this Chapter and who are all members of the same bona fide trade or professional association, may agree to pool their liabilities to their employees on account of personal injury and occupational disease arising out of or incurred during the course and scope of the employment relationship. This arrangement shall not be deemed to be insurance and shall not be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950.

(Emphasis added.)
When the language of a statute is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written without further interpretation in search of the legislature's intent. Detillier v. Kenner Regional Medical Center, XXXX-XXXX, (La.7/6/04), 877 So.2d 100. The language of La. R.S. 23:1195 is clear and unambiguous in stating that the arrangement authorized by its provisions, namely a group self-insurance fund for workers' compensation, is not insurance. The logical conclusion arising from the pronouncement that the arrangement shall not be deemed insurance is that a self-insurer fund created pursuant to R.S. 23:1195 is not an insurer as contemplated by La. R.S. 22:5(10) and is not an insurer whose claims are excluded from LIGA coverage by La. R.S. 22:1379(3)(b).
Self-insurance is one of the ways of securing workers' compensation to employees as provided in La. R.S. 23:1168 along with obtaining a policy of workers' compensation insurance, using a combination of life, accident, health, property, casualty or other insurance policies, or providing satisfactory proof of the employer's financial ability to pay compensation. In Bowens v. General Motors, 608 So.2d 999 (La. 1992), the supreme court held that self-insurance is a method of complying with the requirement of securing workers' compensation for employees. The court noted that self-insurance is not equivalent to an insurance policy, and cited a prior decision, Hearty v. Harris, 574 So.2d 1234 (La. 1991), holding that self-insurance is not insurance at all. The Bowens opinion also cited Jones v. Henry, 542 So.2d 507 (La. 1989), which similarly held in interpreting the Motor Vehicle Safety Responsibility Law that self-insurance was merely a method of complying with that law and that it was not an insurance policy. Moreover, this court in Brown v. Pioneer Log Homes, 28,488 (La.App.2d Cir.6/26/96), 679 So.2d 154, recognized that a workers' *823 compensation self-insurer is neither an insurance company nor an insurer.
LIGA supports its argument by citing decisions from other states which have held that self-insurance groups are insurers whose claims are not covered by their insurance guaranty associations. The main case relied on by LIGA is Maryland Motor Truck Ass'n Workers' Compensation Self-Ins. Group v. Property & Cas. Ins. Guar. Corp., 386 Md. 88, 871 A.2d 590 (Md.2005), which also stems from the insolvency of Reliance, the provider of excess insurance for the plaintiff in compliance with Maryland's workers' compensation law. The plaintiff filed suit after the defendant denied its claims on the grounds they were amounts due an insurer and therefore not "covered claims." The Maryland court upheld the denial by the guaranty association. Its analysis focused on whether the plaintiff was an "insurer," which was defined as persons engaged in the business of making insurance contracts. We find two key distinctions between the law of Maryland and that of Louisiana. First, Maryland's jurisprudence had previously recognized, at least with respect to compulsory motor vehicle insurance laws, that self-insurance is the equivalent of an insurance policy. As discussed above, Louisiana jurisprudence has reached the opposite conclusion. Second, Maryland's laws governing workers' compensation self-insurance groups do not include a provision like that in La. R.S. 23:1195(A)(1) stating that the self-insurance arrangement is not deemed to be insurance. Because of these two distinctions, the decision of the Maryland court is not persuasive.
LIGA also cites South Carolina Property and Cas. Ins. Guar. Ass'n v. Carolinas Roofing and Sheet Metal Contractors Self-Ins. Fund, 315 S.C. 555, 446 S.E.2d 422 (S.C.1994), which held that the guaranty association could deny coverage of the claims of the self-insurer fund stemming from the insolvency of its catastrophic coverage provider. The South Carolina statute authorizing the self-insurance group provided that such groups "shall not be deemed to be insurance companies." The guaranty act excluded claims by insurers but made no mention of insurance companies. Also, South Carolina courts had held that self-insurance is insurance. On the basis of expert testimony, the court concluded that the transfer of risk that occurs among members of a self-insurance group is like insurance. Therefore, the defendant self-insurer group was found to engage in a "kind of insurance" and to be an insurer whose claim was not covered by the guaranty association. This case, too, is distinguishable. Louisiana case law has not likened self-insurance to insurance, and La. R.S. 23:1195(A)(1) provides that the workers' compensation self-insurance arrangement shall not be deemed to be "insurance" unlike South Carolina's provisions referencing "insurance companies." For these reasons, we do not find South Carolina's decision persuasive.
The clear and unambiguous language of La. R.S. 23:1195(A)(1) states that a group self-insurance arrangement shall not be deemed insurance. Statutory law recognizes self-insurance as one method of complying with the requirement of securing compensation for injured employees. Also, Louisiana jurisprudence holds that self-insurance is not insurance or an insurer. For these reasons, we find no merit to LIGA's argument that the Fund is an insurer whose claims are not covered.

Are the claims of the Fund, a self-insurer, excluded from LIGA coverage?
LIGA argues that the Fund's claims are excluded by La. R.S. 22:1379(3)(b) which it interprets as barring claims by self-insurers. LIGA's position is *824 that any amount due a self-insurer, such as the Fund, is not a covered claim.
La. R.S. 22:1379(3)(b) was amended by Acts 1999, No. 477, to exclude any claim due within the coverage represented, replaced, or both by a certificate of self-insurance. According to HB No. 1837 of the Louisiana Bill Digest, the amendment became effective on June 18, 1999, and applies to all pending claims and to all insurance company liquidation proceedings.
Although LIGA interprets the amendment as barring all claims or amounts due self-insurers, the statutory language does not refer to self-insurers but states "within the coverage represented, replaced, or both by a certificate of self insurance as subrogation recoveries or otherwise." La. R.S. 22:1379(3)(b). As pointed out by the Fund, the legislature used different language in referring to self-insurers in R.S. 22:1379(3)(b) than it used as to the other listed entities. The statute excludes "any amount due" specific listed entities-reinsurers, insurers, HMOs and PPOs, employee retirement funds, Medicare, Medicaid, insurance pools, and underwriting associations. Self-insurers are not included in the list. If the statute simply included self-insurers in the list with the other entities, then the language would clearly exclude the Fund's claims. Instead, the statute refers to "any amount due ... within the coverage represented, replaced, or both by a certificate of self-insurance as subrogation recoveries or otherwise."
When a statute's language is clear and unambiguous and its application does not lead to absurd consequences, the law applies as written without further interpretation in search of the legislature's intent. La. C.C. art. 9. There is a presumption that the legislature acted with deliberation and enacted the statute in light of the preceding statutes on the same subject matter. Detillier, supra; City of Minden v. McDaniel, 41,370 (La.App.2d Cir. 12/20/06), 945 So.2d 955, writ denied, XXXX-XXXX (La.4/5/07), 954 So.2d 141. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13; Detillier, supra. This means that courts interpreting a statute must construe it so as to harmonize and reconcile it with other provisions on the same subject matter. Louisiana Municipal Association v. State, XXXX-XXXX (La.1/19/05), 893 So.2d 809.
The issue of interpretation presented is whether the language "any amount due... within the coverage represented, replaced, or both by a certificate of self-insurance as subrogation recoveries or otherwise" means any amount due a self-insurer as asserted by LIGA or whether it excludes only claims within the coverage provided by a self-insurer as asserted by the Fund. Under LIGA's argument, the claims at issue are amounts due a selfinsurer and are not "covered claims." Under the Fund's argument, the claims are not within the coverage it provides as a self-insurer but are within the coverage provided by the Reliance policy and are not excluded by La. R.S. 22:1379(3)(b).
In amending La. R.S. 22:1379(3)(b), the legislature could have included self-insurers but instead chose to refer to the coverage represented by self-insurance. This difference in wording supports the Fund's interpretation that the legislature did not intend to exclude from LIGA coverage any amount due a self-insurer but rather only those amounts that would be covered or within the coverage provided by the self-insurance. Two other provisions support this interpretation. La. R.S. 22:1386(A), which addresses nonduplication of recovery and which was also amended in 1999 by Act 477, requires a person who *825 has a covered claim to first exhaust any rights he has for coverage under a self-insurance certificate. Also, La. R.S. 23:1195(A)(3), the authorizing provision for workers' compensation self-insurer funds, provides that the "arrangement shall not be a member insured" of LIGA and that LIGA shall not be liable "under any circumstances for any claims, or increments of any claims, made against the arrangement." Viewed together, these statutes indicate that LIGA does not cover claims that fall within coverage provided by a self-insurer. While the purpose of LIGA as indicated in La. R.S. 22:1379 is to protect claimants and policyholders affected by the insolvency of insurers, LIGA does not protect against the insolvency of self-insurers. For these reasons, we do not interpret La. R.S. 22:1379(3)(b) to exclude claims by self-insurers but rather to exclude claims that would fall within the coverage provided by self-insurance.
The Fund's claims are not claims or amounts due within the coverage represented, replaced or both by a certificate of self-insurance. Rather, the claims stem from the insolvency of Reliance, the Fund's excess coverage insurer. We find nothing in the provisions governing LIGA or workers' compensation self-insurers that would bar the Fund's claims arising from Reliance's insolvency. Allowing coverage by LIGA in the event of the insolvency of an excess insurer ultimately secures the integrity of the self-insurance system as an important means of providing workers' compensation protection to employers and workers.
The Fund cites Iowa Contractors Workers' Compensation Group v. Iowa Ins. Guar. Ass'n., 437 N.W.2d 909 (Iowa 1989), in its brief. We find this case persuasive. The plaintiff, a self-insurer group, obtained excess coverage from Mission Insurance Company, which was declared insolvent in 1987. The guaranty association then denied the plaintiff's claims stemming from Mission's insolvency. The district court found that the guaranty association was liable for the claims, and its decision was affirmed on appeal. The court first addressed whether the Mission policy was direct insurance or reinsurance. It determined that the Mission policy was direct insurance providing excess liability coverage which tracked the requirements for such protection imposed by the state law on workers' compensation group self-insurers. The Reliance policy served the same purpose for the Fund under our laws. The Iowa court cited Appleman on Insurance § 4601, at 184 (W.F. Berdal ed.1979), which explains that excess coverage obtained by a self-insurer is not reinsurance.
The finding that the Mission policy was not reinsurance was further supported by the court's finding that the plaintiff was not an insurer. Like Louisiana, Iowa law excluded from guaranty coverage amounts due insurers. The court determined that the plaintiff did not fit the definition of an insurer, because it was not licensed as required to be an insurer in Iowa. Also, regulations governing workers' compensation self-insurer groups provided that such groups were not deemed insurance companies, were not subject to the insurance laws, and were not subject to the premium tax levied on direct insurance. The court also examined the risk sharing among the members of the self-insurance group who each sign an indemnity agreement providing for joint and several liability in the event of the group's insolvency. The court found this arrangement to be unlike traditional insurance, which would not require its insureds to contribute their own funds to satisfy the company's claims in the event of insolvency.
*826 Finally, the Iowa opinion cites a report by the National Association of Insurance Commissioners (NAIC) Workers' Compensation Task Force, which prepared a study on workers' compensation group self-insurance that was presented at the 1983 summer annual meeting. The Fund included this same report as an exhibit in its motion for summary judgment. NAIC's report stresses that the greatest risk of insolvency faced by workers' compensation self-insurer groups is the failure of its excess insurer. The report twice notes the availability of insurance guaranty association fund protection for the self-insurers in the event of the excess carrier's insolvency. The report makes clear that the self-insurance group should be able to call upon its state's insurance guaranty fund if its licensed excess carrier becomes insolvent. See 1983-2 NAIC Proc. 737.
While we do not rely on the NAIC report as the basis for our decision, it does clarify the importance of guaranty fund protection for workers' compensation self-insurance groups. Also, it supports the view that such protection stems from the contractual relationship between the group and its excess coverage insurer and not from the coverage provided by the workers' compensation group self-insurance for its members and their employees.
We find that La. R.S. 22:1379(3)(b) does not exclude the claims by the Fund resulting from the insolvency of Reliance. Such claims are not amounts due within the coverage represented, replaced or both by the certificate of self-insurance.

MOTION TO COMPEL DISCUSSION
Also at issue in this appeal is the denial of LIGA's motion to compel answers to discovery of information concerning the financial value of the Fund's members. The trial court is vested with broad discretion to regulate pretrial discovery, such as motions to compel, and its decision will not be disturbed on appeal absent a clear abuse of discretion. Bell v. Treasure Chest Casino, L.L.C., 06-1538 (La.2/22/07), 950 So.2d 654; Walker, Tooke & Lyons, L.L.P. v. Sapp, 37,966 (La.App.2d Cir.12/10/03), 862 So.2d 414, writ not considered, XXXX-XXXX (La.3/19/04), 869 So.2d 836.
LIGA sought the members' financial information to assess whether it has a defense under La. R.S. 22:1379(3)(f), which states in relevant part:
(f) "Covered claim" shall not include any claim asserted for coverage under a policy held by any insured whose net worth exceeds twenty-five million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insurer. However, an insured's net worth on such a date shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries and affiliates as calculated on a consolidated basis. An "affiliate" of the insured includes any person or entity who directly, or indirectly through one of more intermediaries, controls or is controlled by or is under common control with the insured. "Control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of the controlled person or entity, whether through the ownership of voting securities, by contract, or otherwise.
LIGA argues that the Fund's members are affiliates whose aggregate net worth must be considered to determine whether its net worth exceeded the $25 million threshold as of December 31 of the year preceding Reliance's insolvency. Pursuant to La. R.S. 23:1196, employers who are members of a workers' compensation group self-insurance fund are required to *827 make available to the fund's payroll auditor certain payroll records and to allow physical inspections of their operations. La. R.S. 23:1196(A)(2). If a member employer fails to provide the records or allow the inspection, it may be charged additional amounts and assessed attorney fees. La. R.S. 23:1196(A)(2)(c)(ii) and (iii). Members are also subject to civil action by the fund for the failure to provide the required information to the auditor. La. R.S. 23:1196(A)(2)(e). LIGA also points out that fund members are liable in solido for the liabilities of the fund under La. R.S. 23:1196(F), and that a provision in effect at the time of Reliance's insolvency allowed the fund to assess its members to eliminate any deficit during a fund year.[4] According to LIGA, these fund requirements show that the Fund's members are under the control of the fund and that each member's net worth should be included in calculating the Fund's net worth for purposes of the exclusion.
The Fund counters that none of the provisions referred to by LIGA gives it control, as contemplated by La. R.S. 22:1379(3)(f), over the individual members. The Fund asserts that the terms "affiliate" and "control" refer to relationships within a corporate conglomerate and cites Hopkins v. Howard, XXXX-XXXX (La.App. 4th Cir.4/5/06), 930 So.2d 999, writ denied, XXXX-XXXX (La.6/23/06), 930 So.2d 984, in support of its argument.
In Hopkins, supra, James Howard was driving a truck in the course and scope of his employment with Celadon Trucking Services, Inc. ("CTSI") when he rear-ended a vehicle driven by Sheila Hopkins. Hopkins sued Howard, CTSI, and CTSI's liability insurer, Reliance. As we know, Reliance was declared insolvent in October 2001. The pending claims against CTSI were denied by LIGA on the grounds that CTSI and its affiliates exceeded the $25 million net worth provision. This denial by LIGA occurred before the statute was amended to define "affiliate" and "control." Hopkins and CTSI ultimately filed a third party demand against LIGA seeking indemnification and defense of the suit. LIGA then sought summary judgment on the issue of the net worth exclusion. The trial court granted judgment in favor of LIGA.
In affirming that part of the trial court's ruling that upheld the net worth exclusion by LIGA, the appellate court noted that the net worth exclusion had been added by Act No. 475 of 1999, after the date of the accident. However, it is the law in effect on the date of the insurer's insolvency that governs claims against LIGA; thus, the exclusion applied. The undisputed facts established that CTSI's net worth at the applicable time was less than $25 million, but that its parent corporation, Celadon Group, Inc., had a net worth far exceeding that amount. Therefore, the court had to determine whether the undefined term "affiliate" in the 1999 version of the statute included a parent company. The conclusion was that it did. "Affiliate" had a broad meaning that encompassed a parent company. Moreover, the statute's reference to the aggregate net worth of the insured and its subsidiaries and affiliates being calculated on a consolidated basis meant that it considered a parent company and its subsidiaries as a single economic unit for accounting purposes. Though the definition of "affiliate" was added in 2004, the court did not believe the definition would change the result.
Nothing in the record indicates that the Fund's members are part of a single economic *828 unit with the Fund for accounting purposes. The financial information that member employers are required to submit under La. R.S. 23:1196(A)(2) is for the purpose of payroll audits used to determine yearly premiums and to show that the fund contains sufficient capital to pay its normal compensation claims promptly.[5] As pointed out by the Fund, a self-insurer fund is a separate trust that is required to file with the Department of Insurance its own financial statements and reports as per La. R.S. 23:1196(A)(8). Accepting the interpretation of "affiliate" in Hopkins, supra, we cannot say that the trial court erred in denying the motion to compel.
We also find that the definitions added in 2004 would not alter the result. Under the definitions, the individual members would be affiliates of the Fund if they directly or indirectly control, are controlled by, or are under common control with the Fund. La. R.S. 22:1379(3)(f). "Control" means the power to direct the management and policies of the controlled entity or persons through voting shares, contract, or otherwise. Id. Having reviewed the provisions governing workers' compensation self-insurance groups, particularly those cited by LIGA in support of its argument that the Fund and its members are affiliates, we do not find that either the Fund or its members have the power to direct the management and policies of each other. The requirements cited by LIGA do not demonstrate that the Fund exercises the power to direct the management and policies of its individual members. Nor can we say that any individual member has the power to direct the management and policies of the Fund for the fact that its management and policies are largely subject to the provisions set forth under La. R.S. 23:1195, et seq.
For these reasons, we conclude that the trial court did not abuse its discretion in denying LIGA's motion to compel. The individual members of the Fund are not affiliates as that term is used in La. R.S. 22:1379(3)(f).

CONCLUSION
As explained in this opinion, we affirm the judgment of the trial court. In accordance with La. R.S. 13:4521(A), no court costs are assessed.
AFFIRMED.
NOTES
[1] La. R.S. 22:1379(3)(b) also provides that the "insured of an insolvent insurer" shall not be liable for any subrogation claim asserted by the listed entities "to the extent of the applicable liability limits previously provided to such insured by the insolvent insurer."
[2] This is taken from the Fund's Notes to Financial Statements for December 31, 2002 and 2001, entered as Exhibit B in support of LIGA's cross motion for summary judgment and opposition to the Fund's motion for summary judgment.
[3] We note that LIGA's denial of the Fund's claims was based on its finding the Reliance policy to be reinsurance rather than direct excess insurance. However, this issue is not before us on appeal. LIGA's argument concerns whether the Fund's claims are "covered claims" and not whether the policy was excess or reinsurance. In its brief, LIGA notes that the Fund was required to obtain excess insurance and that the coverage under the Reliance policy satisfied the Fund's "statutory excess insurance obligation."
[4] La. R.S. 23:1196(H), which allowed the fund to levy an assessment against the members when a deficit arose, was repealed by Section 2 of Acts 2007, No. 384.
[5] See also Regulation 42, LAC 37:XIII.1101 et seq., applicable to group self-insurance funds.