The opinion of the court was delivered by
Nicholes, C. J.
The plaintiff, suing as representing several of the New Orleans insurance companies, seeks to recover money claimed to have been paid in error by them on their contracts reinsuring maritime risks of the defendant, the Insurance Company of North America.
*1583 In 1862 the defendant insured the cargo of the bark Yorkshire for sixty thousand dollars, reinsuring with three of the plaintiff companies for seventeen thousand five hundred dollars, and for twenty-seven thousand five hundred dollars in other companies, majring the total reinsurance forty-five thousand dollars. On this risk there was a loss of fifty one thousand six hundred and one dollars collected by defendant from the reinsuring companies — the New Orleans companies paying the seventeen thousand five hundred dollars for which they reinsured, other reinsuring companies paying their portion, and the residue, amounting to twelve thousand five hundred dollars, was paid by the defendant as part of the risk they carried, that is without reinsuring. In the same year the defendant insured the cargo of the bark Budstiken, the proposed risk being thirty-five thousand dollars, but only a part of the cargo was laden on board. The reinsurances on that cargo were ten thousand dollars with four of the plaintiff companies, and like amount with other companies, making the total reinsurances twenty thousand dollars on that risk. On that risk there was a loss nearly equal to the amount of the reinsurances, and defendant collected the ten thousand dollars from the plaintiff companies, and a like amount from the other reinsurers.
In 1883 defendant took a risk on the cargo of the bark Adele of one hundred and fourteen thousand dollars. There were reinsurances in five of the plaintiff companies for fifteen thousand dollars, in other companies for forty-six thousand five hundred dollars, making sixty-one thousand five hundred dollars reinsurances. There was a loss on the cargo put on board of nineteen thousand three hundred and nine dollars, all of which was collected.by defendant of the reinsurers.
Plaintiff claims that the understanding in effecting these reinsurances was that the defendant was to carry its line and reinsurance excess, by which we understand that defendants were to retain part of the risks and to reinsure to the extent of that portion of the risk it did not propose to bear. Under bills of exception reserved, they introduced evidence for the purpose of establishing this understanding, and to establish that it was a custom in the city of New Orleans for the reinsurer to carry part of the risk.
Following the negotiation between the parties the plaintiff companies issued certificates, which, on their face, are certificates of unconditional insurance, to cover loss on the cargoes of the York *1584 shire, for seventeen thousand five hundred dollars; on that of the Budstiken ten thousand dollars, and on that of the Adele for fifteen thousand dollars. Defendant maintains that the obligation of the plaintiff companies was precisely that expressed in the certificates- to pay the losses sustained up to the amounts distinctly stated. Plaintiff, on the contrary, insists that the contracts are to be deduced from the testimony, and that the testimony shows contracts' of an entirely different character.
On his theory the companies he represents, with the other reinsurers, were liable for only sixteen thousand six hundred dollars on the loss of fifty-one thousand six hundred and one dollars on the cargo of the Yorkshire — that is, for the excess of fifty-one thousand six hundred and one dollars over thirty-five thousand dollars, the asserted line of defendant — that they were bound for no part of the loss of nineteen thousand dollars on the cargo of the Budstiken, as the loss was under defendant’s line — that on the general average loss of forty-seven thousand dollars on the cargo of the Adele, the plaintiff companies, with the other reinsurers, were only liable for twelve thousand dollars, the excess of loss over defendant’s assumed line of thirty-five thousand dollars — the defendant being liable also, it is insisted, for a general average contribution. The issue of fraud made by the petition that defendant intended reinsuring the entire risk and failed to disclose it, declaring they retained a line, when it is averred they retained none, is not formally waived, but the contention in this court is mainly that plaintiff’s liability was only for the loss over defendant’s asserted lines.
The case is before us on the certificates. We_must accept them as the written contracts of the parties. We first direct our attention to the preliminary question raised by defendant to the introduction of testimony to establish any custom or any understanding to contradict, or vary the contracts of unqualified insurance expressed in the certificates. In view of the allegations of the petition we will consider the evidence, giving due weight to the certificates. When the written contract is assailed as not embodying the intentions of the parties, testimony to that end should carry conviction of the error.
The petition imputes fraud in the defendant in effecting their reinsurances. It charges concealment of the reinsurance of the entire risk and misrepresentation implied by the alleged custom, and by the statement of defendant’s agent, “ we carry our line.”
*1585 We have been referred to the decision in 13th Annual (Louisiana Mutual Insurance Company vs. New Orleans Insurance Company, 13 An. 246). The case was one of reinsurance of sugar, in which the insurer stated in his application that he had a risk on the building, when, in fact, he carried none. The court held that the representation was material and its falsity avoided. The syllabus in the case declares that, in regard to reinsurance, the custom among underwriters in the city of New Orleans is to divide the risk and not take the whole of it — that when the application is silent this is always understood.
We do not think that an argument seeking to maintain that any custom determines the amount of the risk the original retains in effecting reinsurance is sustainable. Reinsurances necessarily vary in amount, according to the nature of the risk, the judgment of the insurer as to the extent it is judicious to reinsure, and the amount the reinsurer is willing to accept. Reinsurances depend entirely on the stipulation of the parties — a reinsurance without specification of the amount reinsured is not one on which it can be supposed business men would enter. Reinsurance is, as one of the witnesses expresses it, “fluctuating.” Each company determines its own line. We can not accept as correct the proposition that in New Orleans custom divides reinsurances between the insurer and the reinsurer. We must take judicial cognizance of reinsurances for any and all amounts according to the views of the parties. There is no division of risks sought here — that kind of an apportionment would not benefit plaintiff, and it has no relation to the issues. Witnesses often mistake for custom their impressions, individual experiences or methods of business, and not infrequently deem that to be custom in its legal sense which is merely the course of business the law itself enforces.
Reinsurances, while they may be of the entire risk, are ordinarily of such portion of the amount the insurer deems proper to reinsure. 1 Kent, S. p. 278. Hence it may be said in reinsurances the general rule is the original insurer retains part of the risk, and in the event of total loss, to that extent of the amount retained, shares the loss with the reinsurers.
If this is not the reinsurance desired, but the reinsurance of the entire risk, for obvious reasons good faith exacts that that purpose should be stated to the reinsurer. All that any custom would enforce was implied by the expression of defendant’s agent. He announced, *1586 as was customary, that the entire risk was not to be reinsured, but the insurer bore part. All that can be said of any usage bearing on this controversy is that in reinsurances the original insurer, without express statement to the contrary, retains part of the risk, and that amount no custom fixes. We are not dealing here with reinsurances of the entire risk, as the petition alleges, and the argument in some of its aspects seems to maintain. The testimony shows that on each of these risks the insurer proposed to bear part. On the Yorkshire risk of sixty thousand dollars, the reinsurances were only forty-five thousand dollars, and defendant paid its part of the loss of fifty-one thousand dollars. On the Adele risk of one hundred and fourteen thousand dollars, the property actually put on board being ninety-one thousand dollars, the reinsurances were sixty-one thousand dollars, and a total loss would have been borne partially by the defendant. As neither the negotiation nor any custom fixed the amount of the risk on those cargoes to be retained by the defendants, and as it did bear a part of the risks, we do not see, in any aspect of custom or fact, any basis for plaintiff’s allegation of concealment and misrepresentation.
There was no reinsurance of the entire risk, hence there was no concealment — there was in each case a part of the risk borne by the defendant, hence there was no misrepresentation in the use of the expression “ we carry our line.” There is no more basis for avoiding the reinsurance in the case of the Budstiken than in that of those we have just considered. Avoiding an insurance for alleged concealment or misrepresentation is a question not for any custom to solve, but one of law for judicial determination. The custom, if any bearing on the subject, may be an incident in the investigation, but the law alone is to ascertain the influence and effect of the supposed misrepresentation. The obligation of a faithful disclosure of all facts material to the risk resting on the reinsurer, the same as on the original insurer, is to be understood in a reasonable sense. The rule exacts the communication of facts, not contingencies. If the information is stated as opinion, expectation or belief, it does not affect the policy if given in good faith — in such case the insurer takes the risk of the statement — if made in bad faith it will avoid the policy. 3 Kent, S. p. 284. When reinsurance on the Budstiken was effected, the l'isk accepted was thirty-five thousand dollars. Of that risk defendant proposed to bear fifteen thousand dollars, hence the rein *1587 surauce was twenty thousand dollars; ten thousand of which was with the plaintiff companies. But the assured failed to get the expected cargo of thirty-five thousand dollars, but placed on board goods to the extent only of twenty thousand dollars on which the loss was sustained, and the reinsurers paid. We can not hold that this reinsurance of ten thousand dollars was made void by the unforeseen failure of the insurer to put on board cargo of equal value to the amount of the risk sought and accepted. The authorities cited in this connection relate to statements of facts that had no existence, made to induce the acceptance of the risk by the insurer. Thus the representation that the insurer was a man of pecuniary responsibility when he was not— that other insurances had been obtained, a fact tending to show that other insurers deemed the risks good, when there was no such other insurances, and the ease from our own court, of reinsurance of sugar obtained upon the false representation that the insurer itself carried a risk on the building when it did not do so, are all instances of false representations as to facts claimed to exist, but which had no reality. These decisions and the principles on which they rest have no application here. The representation in this case that defendant carried its line on the cargo the insurer was to put on board had the prospective significance that the unforeseen, against which none can guard, might prevent the complete loading. The subsequent event, that the cargo to the full amount was not put on board, can not stamp as fraudulent representations, made in all sincerity and truthfulness at the time. Another test might be applied. Suppose the defendant, with a prescience not of men, had foreseen •the contingency of the failure to deliver the expected cargo, and indicated that possibility to the plaintiffs, is it to be supposed the reinsurers of ten thousand dollars on a much larger risk, part of which the insurer expected to bear, would .have been declined, because of the possibility of the failure to del.ver a full cargo which would leave no part of the risk for the original insurer. That bare possibility, in our opinion, would have exerted no influence on the reinsurer, otherwise fully content to reinsure. We think the reinsurance on the cargo of the Budstiken, as on that of the Yorkshire and the Adele, must stand. 3 Kent, 284; Wood on Insurance, Sec. 290 et seq.
We now turn to an examination of the extent of the liability of the companies.
*1588 We are asked to substitute for the contracts of unconditional reinsurance expressed in the certificates the contract of the different character claimed to be established by the testimony of the officers of the companies. If these insurances were of the special character to cover losses only above the amounts placed before us in plaintiff’s argument, it is strange there should have been no specification of these amounts in the negotiation or application. In insurances of that character the minds of the parties are necessarily directed to the fixed amount above which the assured seek indemnity, and below which the insurer is resolved to incur no liability. Plaintiff insists the companies insured only the amount of loss over defendant’s line. We find a general statement from some that defendant’s line was understood to be forty or fifty thousand dollars. How does that statement fix defendant’s line on these risks of thirty-five thousand dollars, sixty thousand dollars and one hundred and fourteen thousand dollars? One witness states that the “ line ” is proportioned to the capital of the company; another that the “ line ” of a company is the amount not reinsured; another that the “ line ” fluctuates 10 be determined by the company. If, in these cases, the line was to be fixed by the reinsurances, whatever the amount, then the risk of these companies was dependent entirely on the disposition or ability of the original insurer to effect reinsurances. If the reinsurer proposes to restrict his liability as contended for by plaintiffs, it is inconsistent he should leave his responsibility entirely uncertain or contingent. In a litigation between an insurance company suing defendant on grounds similar to those urged here the insurance policies had the endorsement to apply to excess over fifty thousand dollars. The litigation failed because the limitation was held not to affect the defendant (North America Insurance Company vs. Hibernia Insurance Company, 140 U. S. 572). But the explicit statement of the policies of no liability, except for losses over the specific amount, is suggestive of the character of the reinsurances in this case on which no definite amount above which loss is to occur is found either in the negotiations or the applications. On the contrary the written contracts are unqualified reinsurances up to seventeen thousand five hundred dollars, ten thousand dollars and fifteen thousand dollars. If that sort of indemnity contended for by plaintiff had been intended, it would seem it would have been explicitly stated in the negotiations and applications. There is no such testimony, and the written contracts are of an entirely different character.
*1589 We have examined the testimony relied on to show that these reinsurances were not “ flat,” but “ excess ” reinsurances accepted with reference to a “line” of original insurance taken out by the company seeking reinsurance. We find no evidence in the record which would justify us, in our opinion, in adopting plaintiff’s contentions. We find no evidence which would warrant us in holding that these reinsurances were to cover losses on one of the risks only above thirty-five thousand dollars; on another above twenty thousand; on the other above thirty-five thousand dollars. On what part of the testimony, as to negotiations or applications, could contracts of that character be sustained? The testimony is indefinite; is based in part on impressions, and in some respects manifestly consists of deductions of the witnesses. The conclusions drawn from the testimony, in support of plaintiff’s case, are directly opposed to the written contracts in which all discussion and negotiations usually end. The expressions attributed to defendant’s agent, with slight variations, are “we carry our line;” “we offer the excess of our line,” or others equivalent thereto. In everyre insurance not of the entire risk, the original insurer carries part of the risk and insures to the extent of the residue, which maybe expressed as the excess of his line. The expressions attributed to defendant’s agent, and from which plaintiffs deduce special contracts, simply announce, in our view, that which is implied in every reinsurance except the rare instance of reinsurance of the entire risk. When the original insurer does not reinsure for the full amount of the risk, in the event of a total loss he pays that part, but when the loss is not total, he goes on the reinsurer the object of all reinsurance. American and English Encyclopedia, Verbo Insurance.
The effect the plaintiff’s argument gives to the expressions of defendant is a reinsurance operative only on loss over a fixed amount, i. e., defendant’s line. No such limitation is expressed and none is is implied. It seems to us the expressions are perfectly consistent with the usual import of reinsurance, which is, that the insurer seeks indemnity not for loss over a certain amount, but for any and all loss up to a certain amount. The plaintiffs now exclude the insurer from indemnity except for loss over certain amounts. That is not usually the purpose of reinsurance. Of course the contract may be modified, but it is difficult to supply the modification from the fact the reinsurance uses language which might well be employed by any *1590 one seeking the ordinary benefit of reinsurance. Reinsurance is indemnity to the insurer for the loss up to the amount, whether for the whole or part of the risk stipulated, and for which the premium is paid. It is a contract as put by the books by which the original insurer procures another to insure him against loss by reason of the original insurance. Again, it is a contract where the insurer, to lessen bis own liability, reinsures or transfers the insurance he has agreed to carry, in whole or in part, to a new insurer, who, thereupon, occupies the same position as the original insurer does to the original insured, or still again: when the loss has happened the rein-surer must pay to the first insurer the amount of the loss within the policy. He must pay the entire sum reassured, and has no concern with any arrangement between the first insurer and his creditors. 3 Kent, Sec. 278, foot-note; Elliot on Insurance, Sec. 3; Biddle on Insurance, Sec. 7, 378. We think it clear from the record that the satisfaction now insisted on by plaintiffs under the contracts was not the indemnity the defendant sought. When defendant insured to cover loss over fixed amounts, as it seems was done in some of the companies, that kind of indemnity was stipulated in the policies. This answers, we think, the suggestion in the briefs, why a different form of indemnity was required from these companies. The contracts differed — the measure of indemnity accorded with the contracts. With these plaintiff companies the certificates were for unconditional reinsurances. With that appreciation, when the losses occurred the demands were for payment of the entire amount re-insured, as the contracts in our opinion required. Prompt compliance without question followed. The light thrown backward years after disclosed to plaintiffs (che petition alleges) that the companies paid in error, and this suit was brought to revoke the payments. With all possible allowance for the alleged ignorance of the facts connected with these losses the payments carry a significance the mind can not easily resist. A demand of payment on insurance intended only bo cover loss up to a fixed amount would naturally suggest to the reinsurer, called on for payment, the inquiry of the amount of the total loss. If under these contracts the plaintiffs were bound for no loss under a certain amount it is difficult to conceive that payments would have been made without the rendition of ah account or some investigation, or, at least, an inquiry of the total loss. But we fail to find that any account was rendered or *1591 asked, or that there was any investigation or inquiry on the subject. The amounts of the reinsurance were paid in full, as we infer, on the simple notification of the losses. In the confidence of commercial intercourse, such payments might well be made under unqualified contracts of indemnity, but, in our view, would be entirely out of the ordinary course of the reinsurances as now contended for, called for no payment whatever, unless the loss exceeded the amount stipulated and to be deemed prominent in the mind of the reinsurer.
The claim of a payment in error naturally suggests how the error occurred. No false representations are suggested unless a call for payment is to be deemed fraudulent. The call affirmed the liability for the amount of the reinsurances. If there was only a qualified liability, as now contended for, an inquiry would have dis'closed no obligation in one case, and in the other two, only for amounts below those claimed. But we are confronted with the fact that with no such inquiry or the faintest suggestion from plaintiffs, they paid the full amounts of the reinsurance, perfectly consistent with the idea of liability for loss up to the amount reinsured and repugnant, we think, to any other appreciation of their obligations!
In this case we are asked by the plaintiffs to displace the clearly defined liability arising from the ordinary contract of reinsurance. Instead of unqualified reinsurance of seventeen thousand five hundred dollars, ten thousand and fifteen thousand dollars, the plaintiffs’ argument is the substitution of special contract only to cover losses over certain amounts which his argument adopts as those intended. On the reinsurance of ten thousand dollars the defendant is to have no indemnity for a loss of nineteen thousand dollars. On an other reinsurance of seventeen thousand five hundred dollars the plaintiffs are only to contribute to make good sixteen thousand dollars of _ a loss of over fifty thousand dollars, and in another case, with sixty-one thousand dollars of reinsurance, defendants are to bear the whole loss of forty-seven thousand dollars, except twelve thousand dollars. This construction strips defendant of all benefit in a reinsurance of ten thousand dollars and sensibly reduces the advantage proposed by premium paid by defendants for reinsurances of sixty-one thousand dollars and fifteen thousand dollars. This construction we are to adopt on the significance plaintiffs attach to expressions of defendants’ agents and conversations from *1592 which plaintiffs deduce their appreciation of the contracts. Our examination leads us to the conclusion that the expressions of defendant’s agent were consistent with the indemnity of the ordinary contract of reinsurance. We think the conduct of the parties accords with that contract. With statements and expressions relied on by plaintiffs for a significance to which we can not assent and opposed by plain written, qualified flat reinsurances, in our opinion, the certificates must stand as expressing the obligations of the plaintiffs, and in fulfilment of those obligations the plaintiffs made the payments now sought to be revoked.
For the reasons herein assigned the judgment appealed from is hereby affirmed.