STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1073


BARBARA ESCUDE LEMOINE

VERSUS

JON OLIVER DOWNS


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2009-4158-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.


REVERSED AND RENDERED.


Jerold Edward Knoll
The Knoll Law Firm, LLC
P. O. Box 426
Marksville, La 71351
(318) 253-6200
Counsel for Plaintiff/Appellee:
    Barbara Escude Lemoine

Philip H. Boudreaux
Attorney at Law
P.O. Box 3347
Lafayette, LA 70502
(337) 984-9480
Counsel for Defendant/Appellant:
    Jon Oliver Downs

**Rodney M. Rabalais**
**Attorney at Law**
**P. O. Box 447**
**Marksville, LA 71351**
**(318) 253-4622**
**Counsel for Defendant/Appellant:**
      **Jon Oliver Downs**

**DECUIR, Judge.**

Barbara Escude Lemoine sued Jon Oliver Downs seeking to be declared owner of certain immovable property located in Avoyelles Parish. The trial court granted partial summary judgment in Lemoine's favor, and this appeal ensued. For the following reasons, we reverse and render judgment in favor of Downs.

On April 1, 1995, John Lemoine, husband of the plaintiff, Barbara Lemoine, donated the property at issue to Barbara's twelve-year-old unemancipated grandson, the defendant, Jon Downs. Downs lived with the Lemoines at the time of the donation. He was the son of Barbara's daughter and was not biologically related to John Lemoine. The act of donation, filed in the public records of Avoyelles Parish, was in authentic form and was signed by John Lemoine as donor and by Jon Downs as donee. John Lemoine reserved the usufruct over the property for life, and he continued to live on the property with his wife Barbara until his death on April 24, 2009.

After his death, Barbara moved away from the property and listed it for sale. She believed that she had inherited the property as part of John's separate property left to her in his will. When an offer to purchase the property was made, however, a title search revealed the 1995 donation to Jon Downs. He refused to sign a quitclaim deed, the proposed sale of the property fell through, and Barbara filed suit against her grandson for declaratory judgment.

Barbara's claim to ownership is based on three allegations. First, she contends the acceptance by Downs of the 1995 donation was "without effect" because he was a minor. She characterizes the donation as an "offer" to donate which John formally withdrew by authentic act in 1997. Second, she asserts the property was transferred to her on two separate occasions: In 1999, by donation *inter vivos*, John attempted

to transfer a one-half interest in the property to Barbara; again in 2009, by donation *mortis causa*, as John bequeathed the property to her in his will. Third, Barbara contends she acquired the property via acquisitive prescription after good faith possession for ten years.

Jon Downs answered the suit and filed a reconventional demand to be declared owner of the property. His claim is based on the 1995 donation, as well as codal articles and jurisprudence which provide that although a minor cannot contract, any contract entered into by a minor is merely relatively null, not absolutely null, and may be attacked only by the minor or his legal representative, neither of which occurred in this case. Downs also filed an exception of no right of action asserting that Barbara Lemoine has no right under the law to bring this suit. He relied on La.Civ.Code art. 1919, which provides that "a contract made by a person without legal capacity is relatively null and may be rescinded only at the request of that person." Downs also filed an exception of prescription pursuant to La.Civ.Code art. 2032, which provides for a five-year prescriptive period for actions on contracts which are relatively null.

The trial court overruled the exceptions filed by Downs. The trial court also denied a motion for summary judgment filed by Downs on the merits but granted Lemoine's partial motion for summary judgment on the merits. Downs appealed, asserting error in the partial summary judgment and also alleging error in the denial of summary judgment in his favor and in the overruling of his exceptions.

On appeal of a summary judgment, an appellate court reviews the record *de novo* to determine whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; *Harrah's*

2

*Bossier City Inv. Co., LLC v. Bridges,* 09-1916 (La. 5/11/10) 41 So.3d 438; *La. Safety Ass'n of Timbermen Self Insurers Fund v. La. Ins. Guar. Ass'n*, 09-0023, (La. 6/26/09), 17 So.3d 350. Our review of the facts and the law lead to the inescapable conclusion that the trial judge erred as a matter of law.

"All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." La.Civ.Code art. 1918. "A contract made by a person without legal capacity is relatively null and may be rescinded only at the request of that person or his legal representative." La.Civ.Code art. 1919. Comments to this article reveal the following:

> (b) Under this Article, only the incapable person or his legal representative is allowed to raise the former's lack of capacity as a basis for rescinding a contract. See Litvinoff & Tête, Louisiana Legal Transactions: The Civil Law of Juridical Acts 102-103 (1969). . . .

> (c) This Article eliminates the previous uncertainty as to the absolute or relative nature of the nullity caused by lack of legal capacity.

The Civil Code further explains the relative nullity of certain contracts in Article 2031:

> A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.

> Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.

In 1994, the Louisiana Supreme Court wrote, "Because of the relative nullity of contracts when a minor is a party thereto, persons who contract with minors do so at their own peril." *Deville v. Federal Sav. Bank of Evangeline Parish*, 93-1853, p. 4 (La. 4/11/94), 635 So.2d 195, 197. Courts have long recognized that minors can annul otherwise binding contracts solely on the basis of their minority:

3

> We believe the tenor running through the articles, cases and various commentaries is that the contracts of minors, although susceptible to annulment by the minor or his representative, nevertheless **create certain legal effects binding on the party contracting with the minor as well as persons who are strangers to the immediate transaction.** In other words, minority is a cloak or a weapon only in the hands of the minor or his representative which is available for [h]is own protection and, so long as the agreement or contract has not been disavowed or annulled, it has the same effect as the contract of a person fully capable of contracting.

*Harris v. Ward*, 224 So.2d 517, 521 (La.App. 2 Cir. 1969) (emphasis added.)

In written reasons for judgment, the trial court held that the donation to Downs was a nullity because of Downs' failure to accept the donation through a legal representative, either at the time he reached the age of majority or at some point during the lifetime of the donor. That holding is incorrect. Downs did in fact accept the donation. He accepted "with gratitude" and signed the document entitled "Donation Inter Vivos" on April 1, 1995 at the same time as John Lemoine and before the same notary and witnesses. Downs was not required to later ratify or further accept the donation. And only Downs, by virtue of his minority, had the right to later rescind his acceptance.

Our *de novo* review of the record exposes clear error in the judgment of the trial court. The body of law which sets forth, explains, and interprets the legal concept of relative nullity leads to the necessary conclusion that the 1995 donation to Downs is valid, as he himself has not sought to nullify the transaction. Downs has owned this property since 1995, subject to his step-grandfather's usufruct, and neither an attempted rescission of the donation itself by the donor, nor the plaintiff's occupancy of the land with her husband pursuant to his usufruct, can serve to invalidate that ownership. Were we to find otherwise, we would be in disregard of the law defining the term "relative nullity." La.Civ.Code art. 2031.

4

Consequently, none of Barbara's claims to ownership have merit: the 1997 rescission of the donation, the 1999 donation *inter vivos* to Barbara, and the 2009 donation *mortis causa* to Barbara all are ineffective, and Barbara, as the spouse of a usufruct owner, could not have acquired the property through prescription. Barbara's acquisitive prescription claim, added by amended petition immediately before the summary judgment hearing, was not specifically addressed by the trial court. To be successful, Barbara's claim must include good faith possession for ten years and just title. She can show neither. The property was donated to Downs in 1995. A donation is irrevocable. La.Civ.Code art. 1468. Nonetheless, John attempted to unilaterally revoke the donation in 1997, in contravention of Civil Code Article 1919, and Barbara signed as a witness. Barbara cannot rely on this document as a basis for good faith acquisitive prescription because it is an act that is declarative rather that translative of rights under La. Civ.Code art. 3483. It simply constituted a declaration by John that he now owns the property because Downs did not properly accept it. John later attempted to donate a one-half interest to Barbara in 1999, even though he owned no interest in the property at that time, and Barbara had knowledge of that because she was a witness to the attempted revocation in 1997. Then, upon his death in 2009, she purportedly received the remaining one-half interest pursuant to John's will.

To say that John's 1997 attempted unilateral revocation of a donation to a minor, with no notice to the minor, somehow evidences just title "sufficient to transfer ownership" as required by Civil Code Article 3483 is simply not tenable. To say that John, and by extension Barbara, may have been in good faith because he may have believed in the validity of the 1997 revocation does not give rise to a factual

5

dispute: The revocation was unilateral. It withdrew an "offer," even though the act referenced was a donation, not an offer, and a donation is irrevocable. The fact that Barbara was a witness to the revocation shows that she was aware of the circumstances of the donation. And the revocation was not a juridical act translative of ownership. Accordingly, Barbara did not have just title. At no time did she possess with just title or good faith.

These are facts already in the record before us. Therefore, no remand is necessary to determine good faith or just title, as the undisputed facts speak for themselves.

Accordingly, we reverse the summary judgment rendered in favor of Barbara Lemoine, reverse the denial of summary judgment rendered against Jon Downs, and reverse the ruling rendered on the exception of no right of action. The exception of prescription is moot. Jon Downs is hereby declared to be the owner of the property described with specificity in Act No. 952507, filed and recorded in Conveyance Book 421, folio 195, of the records of Avoyelles Parish, Louisiana.

For the above and foregoing reasons, the judgment of the trial court is reversed and rendered. Costs of the appeal are assessed to Barbara Lemoine.

**REVERSED AND RENDERED.**