| ELIZABETH W. MAGNER | * | NO. 2025-C-0302 |
| AND MICHAEL W. MAGNER | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| MICHAEL DEAS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-05431, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge
Dale N. Atkins)


Gilbert R. Buras, Jr.
710 Carondelet St.
New Orleans, LA 70130


      COUNSEL FOR RELATOR, Michael Deas


Michael W. Magner
P.J. Kee
JONES WALKER, LLP
201 St. Charles Avenue, 50th Floor
New Orleans, LA 70170


      COUNSEL FOR RESPONDENTS, Elizabeth W. Magner and Michael W.
Magner


      **WRIT GRANTED; RELIEF DENIED**
      **MAY 16, 2025**



DNA

SCJ

PAB

The underlying dispute in this matter is between neighbors regarding a petition for permanent injunction and right of use. Relator, Michael Deas ("Mr. Deas"), seeks expedited supervisory review of the trial court's April 29, 2025 judgment, which granted his Motion for Suspensive Appeal; set the amount of security to be furnished for his suspensive appeal at $45,000; and ordered him to furnish his bond via a third-party surety.[1] Mr. Deas asks us to vacate that judgment and permit him to suspensively appeal—without posting a bond—the trial court's January 6, 2025, March 19, 2025, and March 20, 2025 judgments. Respondents are Elizabeth W. Magner and Michael W. Magner (collectively the "Magners"). For the following reasons, we grant Mr. Deas' writ application but deny the relief requested.

---

[1] Mr. Deas requested expedited consideration from this Court pursuant to La. C.C.P. art. 2124. It provides, in pertinent part:

> Where the party seeking to appeal *from a judgment for a sum of money* is aggrieved by the amount of the security fixed by the trial court, the party so aggrieved may seek supervisory writs to review the appropriateness of the determination of the trial court in fixing the security. *The application for supervisory writ shall be heard by the court of appeal on a priority basis.*

La. C.C.P. art. 2124(C) (emphasis added). As discussed more fully throughout this Opinion, the judgments at issue herein are not for a sum of money. Thus, based on a plain reading of La. C.C.P. art. 2124(C), it is inapplicable to the matter *sub judice*. Nonetheless, we have exercised our discretion to decide this matter on a priority basis.

1

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### <u>Judgments Mr. Deas Seeks to Appeal</u>

The Magners and Mr. Deas are neighbors; and the Magners sought access to parts of Mr. Deas' property to perform work and maintenance on their own property.[2] In resolving the dispute between the Magners and Mr. Deas, the trial court issued three judgments. In its January 6, 2025 judgment, the trial court granted the Magners a limited right of use to access part of Mr. Deas' property "for the purpose of repair and maintenance of the Magner Property"[3] and delineated that Mr. Deas will be entitled to a compensation rate of $25 per day multiplied by the number of days the Magners access his property for certain maintenance and repair projects on their property.[4] The trial court also granted the Magners' Petition for Permanent Injunction and issued a permanent injunction ordering Mr. Deas not to restrict the Magners' access to his property. Further, the trial court granted the Magners access to Mr. Deas' property for "[f]uture [w]ork" but ordered the Magners would have to provide Mr. Deas with notice forty-eight hours prior to the work and pay Mr. Deas $25 per day for any future work. In its March 19, 2025 judgment, the trial court denied Mr. Deas' Motion for New Trial regarding these rulings. Additionally, having ruled in favor of the Magners, in its March 20, 2025 judgment, the trial court assessed Mr. Deas with $6,135.50 in court costs.

---

[2] The facts of the underlying dispute are not at issue in Mr. Deas' expedited writ application.

[3] The trial court also granted this limited right of use to the Magners' "agents, representatives and contractors."

[4] In particular, the trial court permitted the Magners to access Mr. Deas' property "for the purpose of conducting repairs to the parapet and wall running perpendicular to Governor Nicholls Street on the side bounded by the Deas Property including, but not limited to, the construction of scaffolding on the Deas Property." The trial court specified the $25 per day compensation rate applies so long as the Magners' access to Mr. Deas' does not surpass twenty-one days, after which time the Magners owe Mr. Deas $75.00 per day.

## Hearing on Mr. Deas' Motion for Suspensive Appeal

In response to the three judgments summarized above, Mr. Deas filed a Motion for Suspensive Appeal. The trial court held a hearing on Mr. Deas' motion on April 24, 2025. In pertinent part, counsel for the Magners stated:

> Because this [is not] a money judgment, I think . . . it is up to you to set an amount that takes into account the potential damages that could result in the interim, so we are asking that bond be set at [$]45,000, which would account for the costs that have been set already in the matter as well as the risk to the Magner[s'] property during this period where they would not be able to repair the property as we are going into the hurricane season and waiting for this appeal to play out.

In response, counsel for Mr. Deas stated, "Assuming the $45,000 is acceptable to my client, we will post his property as the immovable property" pursuant to La. C.C.P. art. 5121.1 "provided that there is no mortgage standing in the way of that in excess of value, with the appraisal [showing the property is worth over $500,000] being the demonstrated value of the property." Thereafter, counsel for the Magners argued:

> The [Louisiana] Fourth Circuit [Court of Appeal] has a case on this [*Franco v. Franco*, 2004-0967 (La. App. 4 Cir. 7/28/04), 881 So.2d 131] that basically makes clear that the judgment debtor [cannot] be the person or the party who is providing the security or a bond for his own debt. A bond, though, can be secured by immovable property, but it would need to be -- Mr. Deas would need to go through an actual bonding company or a third party that would -- and that is who the Magner's [sic] would be able to go against in the case that they would need to. . . . The Court just makes clear that the judgment debtor cannot be securing his own debt.

Counsel for Mr. Deas then countered that the *Franco* case does not stand for the above proposition urged by counsel for the Magners. Further, counsel for Mr. Deas argued the Code of Civil Procedure does not require a suspensive appeal bond to be placed with a commercial surety if the immovable property serves as the security. Rather, as counsel for Mr. Deas, explained, "The immovable property

3

itself is the bond," and this "operates as a judicial mortgage against the property until satisfaction of the judgment." Neither counsel for Mr. Deas nor counsel for the Magners introduced evidence at the hearing.

At the close of the hearing, the trial court orally ruled that the amount of the suspensive appeal bond was set at $45,000 and that Mr. Deas could secure the bond with his immovable property but had to go through a commercial bonding company to do so. In response, counsel for Mr. Deas argued, "$45,000 is excessive considering the court costs" and in light of the only money awarded by the judgments being in favor of his client, i.e., the trial court's order that the Magners pay Mr. Deas $25 per day if and when they access his property for maintenance and repair of their property. The trial court then explained, "[It is] not about the money . . . . [It is] about us continuing on and the potential damage to the [Magner] home."

### Judgment on Mr. Deas' Motion for Suspensive Appeal

On April 29, 2025, the trial court issued the judgment at issue in Mr. Deas expedited writ application. That judgment states:

> **IT IS HEREBY ORDERED**, that the Defendant, Michael Deas' suspensive appeal is granted, that the amount of security to be furnished for the suspensive appeal is set at [$45,000], and that the security shall be furnished through a bond from a third-party surety.

Mr. Deas' expedited writ application to this Court followed.

## ASSIGNMENTS OF ERROR

In his writ application to this Court, Mr. Deas asserts three assignments of error regarding the trial court's April 29, 2025 judgment:

> [1.] The [trial] [c]ourt erred in ruling that [Mr. Deas'] suspensive appeal bond must be posted with a "third party surety".

4

[2.] The [trial] [c]ourt erred in setting a suspensive appeal bond in an instance in which the only money damages awarded were damages in favor of the appellant [Mr. Deas].

[3.] The [trial] [c]ourt abused its discretion in setting an appeal bond in this appeal of the imposition of a mandatory injunction where there was no evidence of a demand for compliance nor of the measure of damages for the delay resulting from the suspension of the execution.

Based on Mr. Deas' writ application and the Magners' response thereto, we will discuss and resolve the following topics: (1) third-party surety requirement; (2) whether the trial court erred in setting a suspensive appeal bond; and (3) if not, whether the trial court abused its discretion in the amount set. We discuss each of these in turn.

## DISCUSSION

### Third-Party Surety

In his first assignment of error, Mr. Deas contends "[t]he [trial] [c]ourt erred in ruling that [Mr. Deas'] suspensive appeal bond must be posted with a 'third party surety'." Mr. Deas asserts La. C.C.P. art. 5121.1 permitted him to secure his bond with his immovable property and did not require him to use a third-party surety. Further, Mr. Deas explains that while the Magners cited *Franco* to the trial court for the proposition that a commercial surety is required to secure his bond, this is an improper summary of this Court's holding in *Franco*. Resolution of this assignment of error requires us to interpret La. C.C.P. arts. 2124 and La. C.C.P. art. 5121.1 *et seq*.

This Court recently held that "[a]n appellate court reviews a question of law, including the proper interpretation of a statute [or code article], under the *de novo* standard of review, thereby giving no deference to the trial court's interpretation of same." *Hurel v. Nat'l Fire & Marine Ins. Co.*, 2025-0049, p. 5 (La. App. 4 Cir.

5

3/11/25), ___ So.3d ___, ___, 2025 WL 762645, at *3 (alteration in original) (quoting *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2024-0401, p. 10 (La. App. 4 Cir. 1/31/25), ___ So.3d ___, ___, 2025 WL 354086, at *5). Likewise, an appellate court employs the *de novo* standard of review to the trial court's application of a statute or code article to the facts of the case because this also presents a question of law. *Id.* (quoting *State v. Crowther*, 2024-0625, p. 7 (La. App. 4 Cir. 1/31/25), ___ So.3d ___, ___, 2025 WL 354084, at *3). The language of the statute or code article is the starting point for interpretation. *Id.* (quoting *Gemelli v. State*, 2022-0345, p. 3 (La. App. 4 Cir. 11/17/22), 352 So.3d 131, 133). Louisiana Civil Code Article 9 instructs courts that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." With this standard of review and these principles in mind, we turn to the text of La. C.C.P. arts. 2124 and 5121.1.

Louisiana Code of Civil Procedure Article 2124 provides, in pertinent part:

> B. The security to be furnished for a suspensive appeal is determined in accordance with the following rules:
>
> (1) When the judgment is for a sum of money, the amount of the security shall be equal to the amount of the judgment, including the interest allowed by the judgment to the date the security is furnished, exclusive of the costs.
>
> . . . .
>
> (2) When the judgment distributes a fund in custodia legis,[5] only security sufficient to secure the payment of costs is required.
>
> (3) In all other cases, the security shall be fixed by the trial court at an amount sufficient to assure the satisfaction of the

_____

[5] A fund in custodia legis refers to money or property that is under the control and custody of the court.

> judgment, together with damages for the delay resulting from the suspension of the execution.

The trial court's judgments that Mr. Deas seeks to appeal were not for a sum of money. For purposes of La. C.C.P. art. 2124, a "judgment for a sum of money" is "a judgment condemning [one party] to pay a specific sum of money" to another *Pan-Am. Bank & Trust Co. v. Ransom*, 150 La. 142, 143, 90 So. 548, 548 (La. 1921). In that instance, the amount of the security to be furnished for the suspensive appeal "is fixed by law." *Id.*, 150 La. at 144, 90 So. at 548. Though the January 6, 2025 judgment orders the Magners to pay $25 per day to Mr. Deas for access to his property, the judgment does not contain a *specific* sum of money because the amount Mr. Deas receives—if any—depends upon whether the Magners do in fact access his property and, if so, for how many days. Additionally, the March 20, 2025 judgment ordered Mr. Deas to pay court costs, but La. C.C.P. art. 2124(B)(1) distinguishes between money awarded in a judgment and the assessment of costs. Therefore, La. C.C.P. art. 2124(B)(1) is inapplicable to this matter. Further, the judgments do not distribute a fund in custodia legis, so La. C.C.P. art. 2124(B)(2) does not apply.

Rather, the trial court needed to fix the amount of the bond for Mr. Deas' suspensive appeal in accordance with La. C.C.P. art. 2124(B)(3) "at an amount sufficient to assure the satisfaction of the judgment, together with damages for the delay." To this end, in *Wright v. Jefferson Roofing, Inc.*, the Louisiana Supreme Court explained the rationale behind an appellant having to post security for a suspensive appeal bond is to protect the appellee, stating:

> The purpose of the requirement of security for a suspensive appeal is to protect the judgment creditor against the insolvency of the judgment debtor during the course of the appeal. The judgment creditor who by the suspensive appeal loses the right to interim

7

execution on the judgment reciprocally gains the right to execute against additional parties *or property* if the judgment is affirmed on appeal.

1993-1217 (La. 1/14/94), 630 So.2d 773, 775 (emphasis added).

In this latter regard, i.e., the judgment creditor's right to execute against property, La. C.C.P. art. 5121.1 is titled "Bond secured by immovable property." It states:

> Any party to a judicial proceeding who is required by law or court order to provide security may furnish as security a bond secured by immovable property located in this state. The party providing the property bond shall present to a judge of the parish in which the immovable is located an assessment certificate, a homestead exemption waiver if applicable, and a mortgage certificate. Prior to presenting the bond to the court having jurisdiction over the judicial proceeding the bond shall be recorded in the mortgage office of the parish where the immovable is located and the recordation shall be evidenced on the mortgage certificate.

If an appellant furnishes security for his suspensive appeal bond with immovable property pursuant to La. C.C.P. art. 5121.1, the Louisiana Code of Civil Procedure ensures the judgment creditor is protected by requiring the appellant to submit an affidavit "that he is worth the amount for which he has bound himself and that the immovable securing the bond contains assets subject to execution, over and above all his other obligations." La. C.C.P. art. 5122. This guarantees "the equity in the property is adequate to pay the bond." *Aries Marine Corp. v. Blue Streak Marine, Inc.*, 538 So.2d 316, 317 (La. App. 4th Cir. 1989).

None of the provisions in La. C.C.P. art. 2124 delineate that the security for a suspensive appeal bond cannot be secured by immovable property pursuant to La. C.C.P. art. 5121.1. In fact, La. C.C.P. art. 2124(E) states:

> A suspensive appeal bond shall provide, in substance, that it is furnished as security that the appellant will prosecute his appeal, *that any judgment against him will be paid or satisfied from the proceeds*

*of the sale of his property*, or that otherwise the surety is liable for the amount of the judgment.

(Emphasis added). Based on the above-emphasized portion of La. C.C.P. art. 2124(E), the Louisiana Legislature intended that property could serve as the basis for an appellant's security in a suspensive appeal. Further, the language used in the last part of the sentence—"or that *otherwise* the surety is liable for the amount of the judgment" (emphasis added)—establishes that an alternative to a surety being liable for the amount of the judgment in a suspensive appeal is property serving as the security. Under our *de novo* review of La. C.C.P. arts. 2124 and 5121.1, we find it to be "clear and unambiguous" that a party may furnish the security for a suspensive appeal bond with immovable property. La. C.C.P. art. 9. Further, this "application does not lead to absurd consequences." *Id.*

Our position is also buoyed by another rule of statutory interpretation:

> When courts interpret statutes, courts are to "presume[] the Legislature's actions in crafting a law were knowing and intentional" and to presume the Legislature "enacted each statute with deliberation and with full knowledge of all existing laws on the same subject." *Richards Clearview City Ctr., LLC v. Starr Surplus Lines Ins. Co.*, 2024-104, p. 7 (La. App. 5 Cir. 6/5/24), 391 So.3d 101, 107 (first citing *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n*, 2009-0023, p. 10 (La. 6/26/09), 17 So.3d 350, 356; and then citing *Theriot v. Midland Risk Ins. Co.*, 1995-2895, p. 4 (La. 5/20/97), 694 So.2d 184, 186). Courts are to "plac[e] a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it." *Commodore* [v. City of New Orleans,] 2019-0127, p. 13 [(La. App. 4 Cir. 6/20/19),] 275 So.3d [457,] 468-69 (quoting *Pumphrey*, [*v. City of New Orleans*,] 2005-0979, p. 11 [(La. 4/4/06),] 925 So.2d [1202,] 1210). . . . "Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Id.* at pp. 13-14, 275 So.3d at 469 (quoting *Pumphrey*, 2005-0979, p. 11, 925 So.2d at 1210).

9

*225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2024-0401, pp. 24-25 (La. App. 4 Cir. 1/31/25), ___ So.3d ___, ___, 2025 WL 354086, at *12. If we were to hold that a party seeking a suspensive appeal cannot furnish the security for same with immovable property, this would render La. C.C.P. art. 5121.1 superfluous and meaningless. Also, to take the position that a party cannot furnish the security for a suspensive appeal with immovable property would be to contradict the presumption that the Legislature enacted La. C.C.P. arts. 2124 (in 2001) with knowledge of La. C.C.P. art. 5121.1 (enacted in 1984). That is, under the rules of statutory interpretation, we are to presume that the Legislature already knew about La. C.C. art. 5121.1 but nonetheless did not restrict its application in outlining the process concerning security to be furnished for an appeal in La. C.C.P. art. 2124. If the Legislature did not want an appellant to be able to use immovable property to secure a suspensive appeal bond, the Legislature would have decreed this in La. C.C.P. art. 2124.

We not only find this result warranted after reviewing the relevant codal articles but also note that jurisprudence supports this holding too. In *Aries Marine Corp.*, after determining that the subject immovable property had "adequate equity to meet the obligation," this Court upheld a suspensive appeal bond secured by immovable property pursuant to La. C.C.P. art. 5121.1. 538 So.3d at 317. Therein, this Court explained that the Louisiana Legislature did not even restrict "the immovable property used to secure appeal[] bonds [under La. C.C.P. art. 5121.1] to property which is not subject to another encumbrance." *Id.*

Further, we agree with Mr. Deas that *Franco* is distinguishable. In *Franco*, "the plaintiff[-appellant] filed a document in affidavit form styled 'Personal Surety' in which he bound himself under oath 'for payment of any validly rendered

judgment upon demand and further waives all notice thereof.'" 2004-0967, p. 2, 881 So.2d at 132-33. This Court held that such a bond was defective because "as a matter of law, an appellant may not act as his own surety in meeting the requirement for a suspensive appeal bond." *Id.* at p. 10, 881 So.2d at 137. Unlike in *Franco*, Mr. Deas is not trying to act as his own surety; rather, he seeks to have his immovable property secure his suspensive appeal bond. For example, in *Duran v. Allmerica Financial Benefit Insurance Company*, the Louisiana Second Circuit Court of Appeal affirmed Hanover Insurance Company's ability to serve as surety because, in doing so, Hanover was "not serving as 'surety for its own debt'" as neither Hanover nor its named insured had been cast in judgment. 55,599, 55,600, p. 28 (La. App. 2 Cir. 4/10/24), 384 So.3d 1177, 1194. Similarly, though the trial court's January 6, 2025 judgement contains a permanent injunction restraining Mr. Deas' conduct, no part of the trial court's judgments is against Mr. Deas' immovable property thereby preventing it from securing his suspensive appeal bond.

However, in light of the showing Mr. Deas made before the trial court and this Court, we deny his request to vacate that part of the trial court's judgment ordering him to furnish the security through a third-party surety. That is, Mr. Deas did not provide evidence to the trial court or to this Court that he could and did comply with the requirements of La. C.C.P. arts. 5121.1 and 5122. Mr. Deas has not even filed a pleading purporting to be his bond in compliance with the requirements of those articles. *See, e.g., Franklin v. Secretary of State*, 2006-1332 (La. App. 3 Cir. 10/19/06), 942 So.2d 62, (wherein the plaintiff filed "a pleading styled Security Bond for Costs," but the Louisiana Third Circuit Court of Appeal found that "on its face, the document fail[ed] to substantially comply with the

requirements of a bond"). Further, considering the return day for Mr. Deas' appeal was originally set by the trial court as today, May 16, 2025, we decline to remand this matter to provide Mr. Deas with additional time to comply with La. C.C.P. arts. 5121.1 and 5122, thereby further delaying resolution of this matter.

**<u>Whether the Trial Court Erred in Setting a Suspensive Appeal Bond</u>**

In his second assignment of error, Mr. Deas contends the trial court erred in setting a suspensive appeal bond because the only money damages awarded were damages in favor of him, i.e., the $25 per day the Magners must pay Mr. Deas if and when they access his property to perform maintenance and repairs on their property. We disagree with Mr. Deas and point to *Palmisano v. Lake Forest Blvd. Med. Dev.*, 413 So.2d 913 (La. App. 4th Cir. 1982) and *Dempsey v. Hamilton*, 2019-1077 (La. App. 1 Cir. 8/23/19) as examples of cases that run contrary to Mr. Deas' position. In both of those cases, the trial court imposed—and this Court and the Louisiana First Circuit Court of Appeal, respectively, affirmed—a suspensive appeal bond in a matter concerning a judgment that did not award a sum of money to the plaintiff. As this Court explained in *Palmisano*, the rationale behind the suspensive appeal bond therein was that:

> [S]uspension of the judgment cancelling the lis pendens prevents the sale of the land for $650,000 during the appeal, and the question is what damages will defendants sustain as a result. The land is vacant and producing no income. Its conversion into cash would provide defendants with the opportunity to earn interest on the money. Interest is precisely the damages resulting from the loss of the use of money.

413 So.2d at 914. Similarly, in their opposition to Mr. Deas' expedited writ application, the Magners explain that the original cost for the repairs to their home was approximately $30,000; yet, as the Magners further explain, "[t]hat figure will increase not only due to inflation, but by the continuing water intrusion that has

12

been allowed as a result of Mr. Deas'[] refusal to allow the work to be performed." Thus, the suspensive appeal bond in this matter is based on the original repair estimate and represents the further damages the Magners may suffer as a result of the continued delay in executing the trial court's January 6, 2025 judgment allowing them to access Mr. Deas' property for the maintenance and repair of their property (if that judgment is affirmed on appeal, that is). This assignment of error has no merit.

### Amount of Suspensive Appeal Bond

Having determined the trial court did not err in setting a suspensive appeal bond in this matter, we next consider the amount set by the trial court, $45,000. As this Court has previously explained, La. C.C.P. art. 2124(B)(3) "specifies exactly the items the bond shall cover, and naturally, the [trial] [c]ourt must exercise some discretion in estimating the amount of it." *Ignolia v. Pique*, 139 So.2d 34, 37 (La. App. 4th Cir. 1962). *See also Palmisano*, 413 So.2d at 914 (explaining that La. C.C.P. art. 2124(B)(3) governs the amount of the suspensive appeal bond and "confers discretion on the trial court to fix an amount sufficient to secure the judgment's satisfaction and to indemnify the appellee against damages he may sustain from the delay in executing his judgment"). However, according to the Louisiana Supreme Court, "this does not mean that [the trial court] may act arbitrarily in the matter" of setting the appeal bond. *Johnson v. Nat'l Sand & Gravel Co.*, 170 La. 423, 425, 127 So. 889, 890 (La. 1930). If the trial court is "unreasonable or arbitrary in fixing the amount of the bond" or "abuses [its] discretion," then the trial court's "judgment will be modified on appeal." *Palmisano*, 413 So.2d at 914. Thus, an appellate court reviews a trial court's

judgment setting a suspensive appeal bond for an abuse of discretion., 2019-1077, p. 1, 2019 WL 4013971, at *1.

As stated previously, in their opposition to Mr. Deas' expedited writ application, the Magners explain that the trial court record establishes the original estimate for the repairs to their home was approximately $30,000 but that number is likely to increase because of inflation and the water intrusion that continues while the January 6, 2025 judgment cannot be executed during the appeal delays. Considering the trial court's knowledge of same, we find the trial court did not abuse its discretion in setting the suspensive appeal bond at $45,000. Moreover, we agree with the Magners that Mr. Deas' argument that the suspensive appeal bond should not have been set at this amount without "evidence of a demand for compliance" is "a red herring" because the Magners "may not do so during the pendency of [Mr. Deas'] suspensive appeal." In sum, Mr. Deas' third assignment of error is without merit.

## ANCILLARY MATTER

Before concluding this Opinion, we also note that Mr. Deas' writ application did not contain a signed order setting the return date. Accordingly, this Court determined that Mr. Deas' writ application failed to comply with Rules 4-3 and 4-5 of the Uniform Rules of the Courts of Appeal. On May 15, 2025, we ordered the trial court to sign an order setting the return date. Further, we ordered Mr. Deas and the trial court to file the signed order setting the return date with the Clerk of this Court by 12:00 p.m. on May 16, 2025. As of the time this Opinion is being handed down,[6] this Court still has not received the signed order setting the return date.

---

[6] This Opinion is being handed down at approximately 7:30 p.m. on May 16, 2025.

14

Though Rule 4-3 of the Uniform Rules of the Courts of Appeal states that a writ application "shall contain documentation of the return date and any extensions thereof," that Rule further states that "any application that does not contain this documentation *may* not be considered by the Court of Appeal." (Emphasis added.) This Court has held that the "use of the permissive 'may' " in Rule 4-3 "does not prohibit this Court from exercising supervisory jurisdiction." *State in Interest of L.R.*, 2021-0141, p. 4 (La. App. 4 Cir. 3/25/21), 314 So.3d 1139, 1142. In light of the permissive language in Rule 4-3, we considered Mr. Deas' expedited writ application despite the lack of a signed order setting the return date.

## DECREE

For the foregoing reasons, we grant Mr. Deas expedited writ application but deny the relief he requested.

**WRIT GRANTED; RELIEF DENIED**